UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

MAC S. HUDSON, et,al,
    Plaintiffs,

V.

MICHEAL MALONEY, et, al,
    DEFENDANTS,

C.A.No. 01-12145 RGS

### PLAINTIFF'S VERIFIEF COMPLAINT FOR CLASS ACTION

#### Introduction :

Plaintiff's are filing a class action suit for violation of their religious rights under Islamic Religion and for not being afforded the same opportunity to observe their religious beliefs as other religious groups housed within the Department of Corrections, in violation of their first amendmen rights and 14th equal protection rights under the law and governing promulgated State regulatory provisions, G.L.C. 127 §

#### PARTIES:

1. Plaintiff Mac S. Hudson is a prisoner lawfully committed to the Department of Corrections, who reside at MCI-CJ. He is at all time relevant through out this complaint.

2. Plaintiff Derrick tyler is a prisoner lawfully committed to the Department of Corrections, who reside at MCI-CJ. He is at all times relevant throughout this complaint.

3. Plaintiff Antwan Crawford is a prisoner lawfully committed to the Department of Corrections, who reside at MCI-CJ. He is at all times relevant throughout this complaint.

4. Plaintiff Darrick Wilson, is a prisoner lawfully committed to the Department of Corrections, who reside at MCI-CJ. He is at all times relevant throughout this complaint.

5. Plaintiff Anthony Tucker is a prisoner lawfully committed to the Department of Corrections, who reside at MCI-CJ. He's at all times relevant throughout this complaint.

(7)

6. Defendant Michael Maloney is the Commissioner of Corrections, He is at all times relevant throughout this complaint. He's in charge of the care and custody of Plaintiff's and is being sued in his individual and official capacity as Commissioner;

7. Defendant Adrea Emodey is the Head of religious Committee for the Department of Corrections and is responsinle for Plaintiff's ability to observe religious rights. She is at all times relevant in this complaint and is being sued in her individual and official capacity.

8. Defendant Peter Allen is Superintendant of MCI-CJ and is at all time relevant in this complaint. He's responsible for Plaintiff's care and custody and is being sued in his individual and official capacity as Superintendant.

9. Defendant Peter Pepe was Former Superintendant of MCI-CJ and is at all times relevant. He's responsible for the care and custody of Plaintiffs. He's being sued in his individual and official capacity as Superintendent.

10. Defendant Sherry Elliot is Program Director of MCI-CJ, who is at all times relevant throughout this complaint. She is responsible for the care and custody and enforcement of Religious observance of prisoners. She's being sued in her individual and official capacity as Program Director.

## FACTS:

### HISTORY OF ISLAMIC PRACTICE WITHIN DEPARTMENT OF CORRECTION AND ISLAMIC LAWS

11. The Nation of Islam established the Masjihads within all the Massachusetts Department of Corrections in the 1980's when Islam was virtual unknown and practice by a few African Americans in these istitutions.

12. The first Masjids was erected within MCI-Walpole Called MCI-CJ today. Commissioner George Vose and Superintendant Joseph Ponte of MCI-Walpole reached a contract with Nation of Islam representatives permitting these representatives to enter the prison and teach Islam to it's fellow Moslims pupil.

13. The contract reached between the Nation of Islam and Officials outlined religious Islamic practices concerning Halal meals, the practice of Ramadan and the following Eid-ul-Fitr, and access to religious material that permit observance to Islam practice.

3.

14. The Contract consist of prisoners not being served pork or pork by products contained in food, with the promise that Department of Correction would expand the Halal meals in complete observance of Islamic Dietary requirments. That these meals were to be prepared by Moslims employed at the prison kitchen.

15. Prisoners would be permitted to purchase prayer rugs to make their five (5) daily required Salats at their own expense. Prisoners would be able to posses Religious Islam pieces and artifacts i.e. prayer beads, Kufis, at their own expense. The Department of Corrections would provide prisoners with Holy Qur'an (Moslim bible) and payment expense of Ramadan and Eid-ul-Fitr (Feast of Thanksgiving)..

16. The Department of Corrections agreed to follow Ramadan requirements of allowing Moslim prisoners to fast from sun rise to sun set and provide two meals after sunset (Lunch and Dinner) and the breakfast meal before sunrise. Also to allow Moslim prisoners to prepare the meals in accordance with their practice. The prison would allow prisoners to congregate in the chowhall to share their meals at the break of sunset fast and whatever the Moslims could not finish could be taken back to their cells to eat as needed in observance with Islamic beliefs.

17. The Department of Corrections agreed to pay for the Eid-ul-Fitr feast upon the completion of Ramadan. In which Moslim prisoners would be permitted to congregate in a designated area and celebrate Eid-ul-Fitr. This meal would be prepared by the Iman and Moslim prisoners or catered by a Halal company. Congregation would be permitted only where there was no secuirty concern. Moslims confined in segregation would be able to fast and observed the Eid-ul-Fitr. Supplied in this Feast would be a variety of what Allah considered nothing but the best Halal food.

18. The Department of Corrections agreed to supply Imans and Moslims with a place that they could observed their required prayers and sermons that would allow them to submit to their required washing and allow moslim to attend, as was the case with other Religions.

19. Between the mid and Late 1980's the Department of Corrections changed their volunteer Religious programs for security concerns and required all Religous Counsels alike to enter into a signed contract with Department of Correction, requiring them to report prisoners who voiced some kind of threat or foreseeable security concerns and forbidding them from speaking out against the Department of Corrections or reporting what they saw in conflict of DOC's interest.

5.

27. Moslims are to also abstain from foods made up from animals that weren't slaughtered in Islamic beliefs. This consist of additives like yellow die number (5) five and die red fourty (40); animal shorting, oils. See. Ex. A. pg.    A list of what is Halal, considered Haram, or  Mash-booh. Mash-booh is Arabic meaning suspect. See. Ex.A.

28. Moslims are to perform Taharah before conducting their five mandatory Sa'lots  and in preparation of their meals and before eating their meals. Taharah literally means purity, cleanliness and the state of undefilement. Taharah includes outer and inner  cleanliness. Inner cleanliness includes purity of beliefs and purity of thought.

29. Ramadan is a required fast for all Moslims  to observe. Moslims are to abstain from eating from sunrise to sunset. During their sunset break of fast, their required to congregate as a show of harmony and brother unity. See Ex. A.pg.     This fast last for 29 days. In which a sequence of daily prayers  are recited in the name of Allah.

30. Moslims observing Ramadan meals are required to be prepared by Moslims who have observed the Taharah in preparation of their meal. To ensure the food is Halal, and prepared with cleanliness and purity of inner and outer aspects that govern the Taharah.

31. Upon completion of Ramadan fast, Moslims are required to celebrate Eid-ul-Fitr. Where again their required to come together to eat the best of food Allah deemed Halal for consumption. This is done to mark the ending of Ramadan and is the manifestation of real joy and thankfulness for opportunities has given Allah.

32. As with all requirements of Islamic Dietary law, Moslims are to prepare these meals in the state and condition of Tahara, and to ensure that the meals meet the requirements of Halal.See Ex. A. pg.

33. Moslims are required to observe the Eid-ul-Adha (Feast of Sacrafice) on the tenth month of Dhul-Hijjah. Moslims unable to make the pilgrimage Makkah or Arabia are to fast the first nine days of Dhul-Hijjih or minimum on the ninth day (Day of Arafat) the before the feast of sacrafice. On this day of Eid Moslims collecively express their gratitude by remembering, praising, and glorifying Allah in the form of congregational prayer.

34. Like with all Islamic Dietary laws, these meals are to be prepared by Moslims in observance of Taharah and of the Halal meals.

35.  There are substantial diffrences between Kosher meals and Halal meals. See Ex. B.

**DENIAL OF RELIGIOUS RIGHTS**
**BREACH OF CONTRACT.**

36.

36.  Plaintiff Hudson, while confined in SBCC prison submitted a request for meals consistant with his Halals requirments to Director of Programs Tony Mendosa in August of 2000.

37.  Plaintiff requested to be placed on a vegetarian meal without Haram foods or ingrediants. This was processed along with Hudson Halal request for meals. Plaintiff was notified that the Superintendant John Marshall approved the request and the package was forwarded to the Religious Committee. See Ex. B. Correspondences.

38.  Plaintiff Hudson was subsequently transferred to MCI-CJ pending his decision from the Religious Committee. Plaintiff Hudson requested for Halal meals and to be placed on a vegetarain meal with no Haram foods until the outcome of his Religious Committe decision, to Director Sherry Elliot. This was denied and Hudson was informed to await his pending decision.

39.  The Religious Committee only meets twice a year, once in August and once in September. Plaintiff learned this through his continual request for a decision from Ms. Elliot. Ex.B.

40.  After repeated demands of Halal meals being made to Ms. Elliots office from the inner Moslim Community, Ms. Elliot decided to provide the Moslims with Meals that met the religious Seven day Adven and were being supplied to this religious sect.

41.  Plaintiff requested for a menu of the meals to see if any of the meals or ingredients were Haram. After non response from Ms. Elliot's office, Plaintiff wrote to the Superintendant Peter Pepe regarding his non-response. Mr. Pepe forwarded Hudson Ms. Elliots's response of denial of the menu and contents. See. Ex.B. pg.

42.  Plaintiff Hudson appealed the decision of refusal of menu and contents . This request was denied by the Superintendant. Therefore Plaintiff was unable to register for the meal.

43.  Plaintiff Hudson's Halal request has been pending over a year with no resolution, and have been stone wall in obtaining his religious rights in this regard by the Committee. Plaintiff wrote Maloney regarding the pending matter and did not receive no response. Ex. B. pg.

7.

44.  Plaintiff Tyler attempted to register for Halal meals from Sherry Elliot's office. Tyler requested for vegetarian Halal meals and mailed in the proper forms. Ms.Elliot refused to process the form to the Religious Committe unless he had a Iman from the street to certify that he's a practicing Moslim

45.  On or about Nov of 2000 Plaintiff Hudson, Tyler, Tucker, and Wilson was observing Ramadan. On top of the meals arriving late and Plaintiff's grievancing this process. Plaintiff's meals wer being prepared by non-Moslims in the Kitchen department.

46. Ms. Elliot was made rounds in Essex-I where all plaintiffs were confined . Plaintiff's were informed individuality by Ms Elliot, that the prison was not observing Moslims preparing meals in accordance with Tahara. That Plaintiff's could not receive a copy of the menu of food used to cook and prepare the food, or the food to celebrate Eid-ul-Fitra.

47.  As a result of these violations, Plaintiff's were unable to observe their fast and had to break their observance of Ramadan and not participate in Eid-ul-Fitra. See. Ex.C. Affifavits of Kitchen workers.

48.  Plaintiff Hudson,Tyler, and Crawford requested to be permitted to order prayer rugs. All Plaintiff's have been issued Prayer towels as a substitute. However during cell searches of their ceels, these towels are subject to be confiscated mistakenly as being over the two towel per inmate.

49.  Plaintiff Hudson have personally experience that his prayer towel was desecrated on two occasions after a cell search. Where he found his prayer towel with foot prints on it and on the floor, or confiscated. Each time this ocurred Hudson was told that the officer mistaken it for a regular towel, or that the officers did not know how it was damaged.

50.  Plaintiff's Hudson, Tyler and Crawford, filed a seperate proposal to Ms elliot pertaining a request to purchase a Prayer rug in order to make prayer and ovoid the difficulties endured with the towels. This was denied. Plaintiff's request for Superintendant Peter Allen consider their proposal with attached catalog from a distributor to deliver service. This was denied for no security reasons at all. See. Ex.C.pg.

**UNEQUAL TREATMENT CLAIMS:**

51.  Judasiam prisoners are permitted to have Kosker meals in adherence to their Religion,ordered from an out side distributor. Therefore the Department of Corrections have demonstrated their ability to meet other

8.

religion Dietary means.

52. Moslim prisoners observing Islamic Dietary demands are not afforded Halal meals as Judasiam are afforded Kosher meals from an outside vender.

53  Prisoners observing the Wica Religion are permitted to posses religious garbs and items consistent with thier riligion. Native Americans are supplied with items to perform their rituals.

54. Moslim prisoners are not permitted Prayer rugs ordered through a vender at their own expense, despite no security interest preventing possession of this item. Ex. D. Moslims are not permitted to receive donation from outside Islamic Community Masjids to prison officials for the use by Moslim prisoners i.e. Prayer rugs or Videos. Without no expressed security concerns.

55.  Moslim prisoners are not permitted to observe Eid-ul- Adha within the Department of Corrections as their counter parts are able to observe the required Fast and celebration in SBCC prison under Iman Omar Bassma.

56.  Moslims at MCI-CJ are required to sign up for service. If their name is not on the list, then they're denied their religious right to worship and make prayer. MCI-CJ doesn't require Christians or Catholic prisoners to sign up for religious service and thereby deny them the ability to participate and make relious prayer or congregation prayer.

57.  Plaintiff Hudson, Tyler and Crawford was serving a year loss of TV sanction and held in a segregated unit (Essex-I) considered population by Defendants. During this time Plaintiff's was disallowed the right to make mandatory Jumar prayer. MCI-CJ did not make arrangements for prisoner without TV's to participate effectively in Jumar prayer through close circuit prison Tv.

58.  Plaintiff's submitted a request to have the inner parameter control office  approve an inmate that does'nt pose a security risk to MCI-CJ to make rounds with the Iman to perform the  Kutbah . Kutbah needs three people in accordance with Sunnah to have Jumar prayer. This was denied by Ms. Elliot and Mr. Allen.

### CLAIMS OF RELIEF:

Paragraphs 1 to 58 are in corporated below:

9.

59. By denying Plaintiff Hudson Halal meals, and the opportunity to review the ingrediants to the vegetarian meals for comparison with his religious dietary requirements violated Hudsons first amendment rights to the U.S. Constitution and violated promulgated regulations 103CMR471.07.(1) (a) (d); 103CMR471.09. (5) and Standard operation procedures of Diet meals request by the Department of Correction.

60. By denying Plaintiff Hudson a timely response on his Halal and vegetarian request and the Commissioner Maloney refused to intervene to order the religious Committee to comply with a ruling on Hudsons dietary request violated Hudson's 1st amendment rights to U.S constitution and promulgated regulations 103CMR471.07.(1) (a) (b); 103CMR471.09.(5) and standard operation procedures of Diet meal request by the Department of Corrections.

61. By denying Plaintiff Tyler the ability to apply for Halal vegetarian meals without an outside Clergyperson vouching for his membership to Islamic beliefs violated Tyler's 1st amendment rights to U.S. constitution and 103CMR471.07 (1) (a) (b); 103CMR471.09. (5) and standard operation procedures for dietary religious meals request.

62. By denying Hudson and Tyler access to Halal meals consistent with their religious beliefs, while such rights are afforded to other religions within the prison violated Plaintiff's Equal protection rights 14th Amendment to the U.S. constitution and 103CMR471.07.(1) (a) (b), 103CMR471.09. (5) and Standard operational dietary standards.

63. By denying Plaintiff's the ability to practice Ramadan in accordance with established procedures by Islamic law and verbal contract reached with administration officials and the Nation of Islam constituted a breach of contract and violation of Plaintiff's freedom to practice their religion 1st amendment rights to the U.S. Constitution and promulgated regulations 103CMR471.07. (1) (a) (b); and 103CMR.471. 09. (5) (b).

64. By denying Plaintiff's the ability to posses religious items ordered from an approved vender and that doesn't pose a security risk. As well as the ability to receive donations of Prayer rugs directly to prison officials control and custody for use by Moslim prisoners violated Plaintiff's 1st amendment rights to the U.S. constitution religious freedom and 14th amendment rights Equal treatment to U.S. constitution; and 103CMR471.07.(1)(a)(b) and 471.11.(1).

11.

g. violating Plaintiff's 1st amendment and 14th amendment rights to U.S. constitution and 103CMR.471.07.(1)(a)(b) and 471.11.(1).

h. By denying Plaintiff's the opportunity to observe Jumar by providing opportunity to those prisoners not having tv's and requiring Moslims to sign up in order to observe religious prayer while not regulating other religions to do so violated Plaintiff's Equal treatment and freedom to practice their religion 1st and 14th amendment to the U.S. Constitution and 103CMR471.07.(1)(a)(b) and 471.09.(6).

i. Award Plaintiff's 2500. in punitive and compensatory damages for violations in paragraphs g and h.

j. Declare Plaintiff's have an religious obligation to observe Eid-ul-Adha fast and celebration. That defendant's have denied Plaintiff's the opportunity to do so as provided to prisoners in SBCC prison, violating plaintiff's 1st and 14th amendment to U.S. Constitution and 103CMR471.07.(1)(a)(b) and 471.09.(5)(b).

k. Order defendant's to provide Plaintiff's with the opportunity to observe Eid-ul-Adha and award plaintiff's punitive and compensatory damages.

l. Award attorney fees pursuant to 42 U.S.C.1988 or alternative fees for plaintiff filing and prosecution of complaint.

m. Award Plaintiff's whatever else this Court deems just and fit.

### VERIFICATION OF COMPLAINT

I, Swear under the pains and penalties of perjury that I read paragraphs 1 to 65 and to the best of my recollection they are true and accurate. Sign this 17th day of Nov 2001

Signed

*Mac Hudson*

*Antwan Crawford*
*Derick Tyler*
*Anthony Tucker*
*Darrick Wilson*

12.

> Respectfully Submitted
> Pro-se
>
> *Mac Hudson*
>
> Mac Hudson
> P.O.Box 100
> S.Walpole Mass 02071
>
> *Derrick Tyler*
> Derrick Tyler
>
> *Antwan Crawford*
> Antwan Crawford
>
> *Darrick Wilson*
> Darrick Wilson
>
> *Anthony Tucker*
> Anthony Tucker