UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAC S. HUDSON and<br>DERICK TYLER,<br><br>  Plaintiffs,<br><br>v.<br><br>KATHLEEN DENNEHY, in her official<br>capacity as Commissioner of the<br>Massachusetts Department of<br>Correction,<br><br>  Defendant. | CIVIL ACTION NO. 01-12145-RGS |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS

Defendant Kathleen M. Dennehy, the Commissioner of the Massachusetts Department of Correction ("DOC"), hereby moves, pursuant to Fed. R. Civ. P. Rule 52(c), that this Court enter judgment on partial findings for her as a matter of law on all claims. Plaintiffs have been fully heard on the claims raised and have not shown that, as a matter of law, they are entitled to judgment.

## ARGUMENT

I.    **PLAINTIFFS HAVE FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES PRIOR TO FILING COMPLAINT AS REQUIRED UNDER THE PLRA.**

Defendant is entitled to judgment as a matter of law on the following claims brought by plaintiffs under federal law:

1.    Plaintiff Derick Tyler's claim regarding Halal meals;
2.    Plaintiff Derick Tyler's claim regarding access to a prayer rug;
3.    Plaintiff Derick Tyler's claim regarding access to Jum'ah services;
4.    Plaintiff Mac Hudson's claim regarding access to a prayer rug; and
5.    Plaintiff Mac Hudson's claim regarding access to Jum'ah services.

The only claim in which there was an exhaustion of available administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997e(a), is plaintiff Mac Hudson's claim regarding his request for Halal meals. Plaintiffs have been fully heard on the issue of their exhaustion of available administrative remedies and they have not shown that they exhausted their administrative remedies prior to initiating this civil action, as is required by the PLRA.

The Prison Litigation Reform Act ("PLRA") imposes an exhaustion requirement with respect to all federal claims made by prisoners, providing:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

The PLRA's exhaustion requirement applies to plaintiffs' claims under federal law. See Porter v. Nussle, 534 U.S. 516, 532 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Exhaustion of administrative remedies is a requirement, or condition precedent, under the PLRA, which must be met before a prisoner's cause of action under federal law can accrue, regardless of whether the claim is brought in federal court or state court. See, e.g., Martin v. Ohio Dep't of Rehab. & Corr., 749 N.E. 2d 787 (2001). The First Circuit has found, in Casanova, et al. v. DuBois, et al, 289 F.3d 142 (1st Cir. 2002), that dismissal for failure to comply with the exhaustion requirements of the PLRA is mandatory. In Casanova, the First Circuit squarely addressed the consequence of a plaintiff's failure to exhaust, and held that "[u]nless appellants

have satisfied the PLRA's exhaustion requirement, their cases <u>must</u> be dismissed." 289 F.3d at 147 (emphasis added).

The PLRA mandates complete administrative review of all claims before an inmate may bring a § 1983 action. <u>Brown v. Toombs</u>, 139 F.3d 1102, 1104 (6th Cir. 1998) (plaintiffs must allege and show that they have exhausted all available state administrative remedies and the district courts should enforce exhaustion requirement <u>sua sponte</u> if not raised by defendant). Policy considerations support a plaintiff-inmate's compliance with the applicable administrative process before filing suit. The District Court for the Southern District of New York articulated these considerations in stating the following:

> There are a number of important reasons which support exhaustion of administrative remedies. First, an exhaustion requirement better serves the policy of granting an agency the opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. Second, an exhaustion requirement better avoids the possibility that frequent and deliberate flouting of prison administrative processes could weaken the effectiveness of those prisons by encouraging people to ignore their procedures. Third, an exhaustion requirement promotes judicial efficiency. Fourth, even if no relief is granted, a prisoner's resort to the administrative process is not futile, but allows grievances to be heard and a record to be created for review in any subsequent proceeding.

<u>Beatty v. Goord</u>, 210 F.Supp. 2d 250, 254 (S.D.N.Y. 2000) (citations omitted)(dismissing plaintiff's complaint for failure to exhaust available administrative remedies pursuant to the PLRA). The Supreme Court has concluded that the PLRA requires "proper exhaustion," that is, a prisoner must comply with an agency's deadlines and procedural rules. <u>Woodford v. Ngo</u>, 126 S.Ct. 2378, 2386 (2006).

The DOC's Religious Services Review Committee ("RSRC") is the administrative review body charged with review of all inmate religious services requests, both now and at the time of the filing of the complaint. In order to process and fairly accommodate the multitude of

practices and religious property item requests from inmates, the DOC developed a Religious Services Handbook, ("RSH") in April 1999 as a reference tool to assist administrators when evaluating inmate religious requests. Rasheed v. Commissioner of Correction, 446 Mass. 463, 467-468, n 5 (2006). The RSH lists the fifteen religious groups that inmates most commonly identify with, including Islam, as well as the commonly accepted practices for these groups, including religious holidays and items used in corporate and individual worship. If an inmate seeks a religious item or feast that is not listed in the RSH, a copy of which is available to all inmates in the inmate law library, the RSH contains information as to how an inmate is to submit his request for a religious item, feast or other ritual. This is done by a Religious Services Request Form ("RSRF"), with supporting documentation, made to the Superintendent or his designee, and the Superintendent will forward the information, along with his or her recommendation, to the Religious Services Review Committee ("RSRC"). Rasheed, 446 Mass. at 468, n.6.; See also 103 CMR 403.09(9). The RSRC will review the request and make a formal recommendation to the Commissioner for her final decision. Id. at 476. The RSRC may seek further information regarding the request from a variety of sources, including the Department's chaplains, and outside religious groups. The RSRC is comprised of three Associate Deputy Commissioners who, as former Superintendents at several DOC facilities, represent the Department of Correction's penultimate security concerns, and the Director of Program Services, who functions as chairperson of the committee. Rasheed at 468, n. 6.

In the case at bar, it is indisputable that Plaintiff Derick Tyler failed to bring forth the issues of his claim for Halal meals, prayer rugs, and access to Jum'ah services while in segregation and that Plaintiff Hudson failed to bring forth the issues of his claim for prayer rugs and access to Jum'ah services while in segregation with the RSRC by means of an RSRF to the

4

Superintendent or his designee. Plaintiffs have failed to put forth any evidence at trial demonstrating that they submitted RSRFs regarding these claims. Moreover, the DOC's Director of Program Services, a witness called by plaintiffs, testified that her department had no record of receiving RSRFs from the plaintiffs, except for Hudson's RSRF for Halal meals. See Rasheed at 475-477 (Supreme Judicial Court finds that RSH is valid and in accord with relevant statutory and regulatory authority). For this reason, plaintiffs failed to exhaust their administrative remedies with regard to these claims to the degree required by controlling caselaw, and, as such, the Court should enter judgment as a matter of law against them on the following claims: 1) Plaintiff Derick Tyler's claims regarding halal meals; 2) Plaintiff Derick Tyler's claims regarding prayer towels; 3) Plaintiff Derick Tyler's claims regarding access to Jumaah services; 4) Plaintiff Mac Hudson's claims regarding prayer towels; and 5) Plaintiff Mac Hudson's claims regarding access to Jumaah services, leaving only Plaintiff Mac Hudson's claims regarding halal meals to be addressed by defendant in her case-in-chief.

## II.   PLAINTIFFS HAVE FAILED TO SHOW, AS A MATTER OF LAW, THAT THEY ARE ENTITLED TO PROSPECTIVE RELIEF ON THEIR CLAIMS.

In order to succeed on a request for a permanent injunction, this Court must find: 1) plaintiffs prevail on the merits; 2) plaintiffs would suffer irreparable harm without an injunction; 3) the harm to plaintiffs would exceed the harm to defendant from the imposition of an injunction; and 4) the public interest would not be adversely affected by an injunction. See Pagan v. Calderon, 284 F.3d 184, 191 (1st Cir. 2002). Injunctive relief is "to be used sparingly, and only in a clear and plain case." Rizzo v. Goode, 423 U.S. 362, 378 (1976). When a government agency is involved, the requirement that the government be granted the "widest latitude in the dispatch of its own internal affairs" must be observed. Id. at 378-379. Such considerations are strengthened when a state agency is involved due to federalism concerns.

O'Shea v. Littleton, 414 U.S. 488, 499 (1974) ("proper balance in the concurrent operation of federal and state courts counsels restraint against the issuance of injunctions against state officers").

Further, the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, holds that "[t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). A court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." Id. See Feliciano v. Rullan, 378 F.3d 42, 50-51 (1st Cir. 2004); Oluwa v. Gomez, 133 F.3d 1239 (9th Cir. 1998).

### A. The Vegetarian/Alternative Menu Available To Plaintiffs Does Not Substantially Burden Their Religious Practices Under RLUIPA.

Plaintiffs seek prospective relief in the form of an order requiring that they be provided with Halal meals prepared by Muslims in the state of Tahara. Judgment should be entered in defendant's favor where plaintiffs have failed to show that the vegetarian/alternative menu substantially burdens their religious practices.

Section 3 of RLUIPA prohibits state governments from placing a substantial burden on the religious exercise of institutionalized persons unless the government demonstrates that the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that compelling interest. 42 U.S.C. § 2000cc-1(a).

An inmate's religious practices are substantially burdened where the state policy coerces the individual into acting contrary to their religious beliefs. See Lyng v. Northeast Indian Cemetery Protective Association, 485 U.S. 439, 450-451 (1988) ("Incidental effects which may make it more difficult to practice certain religions, but which have no tendency to coerce

individuals into acting contrary to their religious beliefs [do not] require government to bring forward a compelling justification for its otherwise lawful actions."); Sherbert v. Verner, 374 U.S. 398, 404 (1963). However, no substantial burden results from a restriction of a particular accommodation if the inmate has ample alternative means to pursue his religion. Diaz v. Collins, 114 F.3d 69, 72 (6th Cir. 1997) (restriction on Native American practitioner's wearing of a medicine pouch and headband did not substantially burden religious beliefs); Rasheed, at 473 (under compelling interest test, plaintiff must establish that government restrictions impede ability to engage in religious practices).

In the instant case, plaintiffs have failed to meet their burden of proof on this issue where their own expert in Islamic dietary laws, Mohammad Hussaini, testified that there was no basis in Islam for plaintiffs' claim that a Halal diet must contain meat or that a Halal diet must be prepared only by Muslims in the state of Tahara. Islamic dietary expert Hussaini testified at trial that a vegetarian menu that contains Halal ingredients was sufficient under Islamic dietary laws. Mr. Hussaini further testified that as long as the food was Halal, it could be prepared by any individual, whether Muslim or non-Muslim. Further, plaintiffs' own testimony at trial regarding the dietary practices of Islam and the Nation of Islam was contradictory, with plaintiff Hudson stating that vegetarian meals were a violation of Islamic dietary laws and plaintiff Tyler stating that he was a vegetarian, which was lawful under dietary laws of Islam and the Nation of Islam. Nor did Hudson cite to any Islamic dietary expert or to any portion of the Qu'ran or any other Islamic or Nation of Islam text or expert in support of his contention that his is required to consume meat on a regular basis. Where Hudson's beliefs regarding Islamic dietary laws are contradicted by his co-plaintiff and are not supported by plaintiffs' own expert witness nor any

7

religious text, doctrine, or practice, it is clear that plaintiffs cannot establish that access to the DOC's vegetarian/alternative menu substantially burdens their religious practices.

Moreover, plaintiffs are unable to establish the existence of a substantial burden where neither they nor their Islamic dietary expert, Hussaini, could demonstrate that the DOC's vegetarian/alternative menu was not Halal. Expert Hussaini testified that he was unable to determine without further research, as to whether the vegetarian/alternative menu was or was not Halal. In the absence of evidence that the DOC's vegetarian/alternative menu was not Halal, plaintiffs have failed to demonstrate the existence of a substantial burden to their religious practices and defendant is entitled to judgment as a matter of law.

B.     DOC's Policy Providing For Prayer Towels Does Not Substantially Burden Plaintiff's Religious Practices Under RLUIPA.

Here, plaintiffs have failed to demonstrate a substantial burden to their religious practices due to the DOC policy providing them with access to a prayer towel in lieu of a prayer rug. First, the evidence at trial showed that plaintiffs are able to observe the religious practices of the Nation of Islam such as the Ramadan fast, annual Eid feasts, praying five (5) times daily, conduct ablution, possess a kufi, prayer beads, prayer oil, a Qur'an and other religious books, and has access to a pork-free menu and a vegetarian alternative menu. Plaintiffs are in general population and have access to religious services conducted by a Nation of Islam chaplain. Plaintiffs will also have access to weekly Jum'ah services conducted by a Muslim chaplain.

Plaintiffs have not demonstrated that using a prayer towel instead of a prayer rug has substantially burdened their religious practices since the prayer towel provides a clean surface upon which to pray. Nowhere have plaintiffs shown that the use of a prayer towel prevents them from conducting their daily prayers or is coercive in any way.

8

Finally, the Massachusetts Supreme Judicial Court has reviewed the DOC policy providing inmates with prayer towels under the compelling interest test and determined that the policy did not substantially burden the prisoner's exercise of religion where it did not limit his religious practices or coerce him into acting contrary to his religious beliefs. Rasheed, supra at 473. Accordingly, defendant should be granted judgment as a matter of law where plaintiffs have failed to show that the DOC prayer towel policy constitutes a substantial burden in violation of RLUIPA.

C.     **Defendant Is Entitled To Judgment As A Matter Of Law On The Claim Of Access To Jum'ah Services While Confined To MCI-Cedar Junction's Segregation Unit.**

Plaintiffs have failed to show, as a matter of law, that the failure to provide them with access to weekly Jumah services while confined in Cedar Junction's Special Management Unit ("SMU") or "Block 10," constitutes a substantial burden to their religious practices under RLUIPA.

First, plaintiffs' claim for prospective relief regarding their access to weekly Jum'ah services fails as a matter of law, where plaintiffs have failed to demonstrate that they face a "real and immediate threat of harm" regarding access to religious services while confined to Cedar Junction's SMU. City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983). It is undisputed that plaintiffs are presently housed on general population units in Cedar Junction and have access to separate weekly religious services conducted by a Nation of Islam chaplain and a Muslim chaplain. Plaintiffs failed to demonstrate that they face a future possibility of being placed in Cedar Junction's SMU

Nor have plaintiffs demonstrated that they will face a substantial burden if temporarily housed on the Block 10 unit while on awaiting action status where the evidence at trial

9

demonstrated that they would have weekly access to a chaplain, as well as other religious practices.

### D.      Plaintiffs Are Not Denied Equal Protection With Regard To Their Meals.

Plaintiffs allege that providing Jewish inmates with a Kosher diet, but denying plaintiffs a Halal diet violates their rights under the Equal Protection Clause. The standard of review of an equal protection claim is reasonableness test adopted in Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner, supra at 89, the Supreme Court held that "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests" and set out four factors to be considered in determining when a regulation is reasonably related to legitimate penological interests.

Second, in order to succeed on an equal protection claim, a plaintiff must also show that a discriminatory purpose was the motivating factor in the defendants' decision not to provide them with a Halal diet. See Washington v. Harper, 426 U.S. 229 (1976); Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994), cert denied, 514 U.S. 1108 (1995) (to prove equal protection violation, plaintiff must demonstrate that action taken with discriminatory intent.). However, there is no equal protection violation where differences result from reasonable efforts to accommodate the requirements of different religions. Cruz v. Beto, 405 U.S. 319 (1972).

Defendant is entitled to judgment as a matter of law on plaintiffs' equal protection claim where they have failed to demonstrate that the differences in the diets available to Jewish inmates and Muslim inmates are the result of a discriminatory purpose. Plaintiffs may not rely on mere speculation or conjecture to meet their burden of proof regarding the existence of a discriminatory purpose as the sole basis of the DOC policy to provide Jewish inmates with pre-packaged Kosher meals and to provide Muslim inmates with the vegetarian/alternative menu.

10

Moreover, the testimony of plaintiff's expert on Islamic dietary laws failed to show that Islamic dietary laws are similar to those of Jewish dietary laws. In particular, Mr. Hussaini testified that Islamic dietary laws do not require that Halal food be prepared in separate kitchens using separate cooking equipment, utensils and plates, as is required for Kosher food. Further, plaintiffs have not demonstrated that the alternative/vegetarian menu available to them is not Halal. Where the differences between the menus available to Jewish inmates and plaintiffs are based on religious dietary differences, plaintiffs are unable to demonstrate the discriminatory intent necessary to support the claimed equal protection violation. See Abdul-Malik v. Goord, 1997 WL 83402, * 7-9 (S.D.N.Y. February 27, 1997) (prison policy providing a Kosher diet but denying Muslim inmates a Halal diet did not violate the Equal Protection Clause); Abdullah v. Fard, 974 F. Supp. 1112, 1118 (N.D. Ohio 1997) (failure to provide Muslim inmates with Halal meals while providing Jewish inmates with Kosher meals did not violate the Equal Protection Clause); Johnson v. Horn, 150 F.3d 276, 281-285 (3rd Cir. 1998) (no Equal Protection Clause violation where differences between the diets of Muslim and Jewish inmates were rationally related to legitimate penological interests); Dehart v. Horn, 277 F.3d 47, 61 (3rd Cir. 2000); Muhammad v. Warithu-Deen Umar, 98 F. Supp.2d 337, 344-345 (W.D. N.Y. 2000); Defendant is entitled to judgment as a matter of law on the claim brought under the Equal Protection Clause.

## CONCLUSION

For the foregoing reasons, defendant requests that judgment on partial findings be entered in her favor on all claims, pursuant to Fed. R. Civ. P. 52(c).

Dated: January 18, 2007                          Respectfully submitted,

                                                 NANCY ANKERS WHITE
                                                 Special Assistant Attorney General

11

Richard C. McFarland,  BBO# 542278
Charles Anderson, Jr., BBO# 635016
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(617) 727-3300